IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | February 23, 2010 |
| | ) | |
| -versus- | ) | Greenville, SC |
| | ) | |
| SHAY CHARLES MICHAELSON, | ) | 6:06-946-1 |
| KRISTEN MARIE HARMON, | ) | 6:09-894-2 |
| ALVARO EZEQUEIL ALAS, | ) | 6:09-1067-1 |
| LEONIDAS HYESTOS, | ) | 6:09-1067-2 |
| JOEY RAYSHON PATTERSON, | ) | 6:09-1078-2 |
| TOMMY TRAVIS RICE, | ) | 6:09-1078-4 |
| ERIC MICHAEL SHOEMAKER, | ) | 7:09-1079-1 |
| Defendants. | ) | |


TRANSCRIPT OF CHANGE OF PLEA

BEFORE THE HONORABLE HENRY M. HERLONG, JR.
SENIOR UNITED STATES DISTRICT JUDGE, presiding


A P P E A R A N C E S:

For the Government:            DAVID C. STEPHENS, AUSA
                               WILLIAM J. WATKINS, JR, AUSA
                               ANDREW B. MOORMAN, AUSA
                               US Attorney's Office
                               105 N. Spring St., Ste 200
                               Greenville, SC 29601


For Defendant Michaelson:      DAVID W. PLOWDEN, ESQ.
                               Federal Public Defender
                               75 Beattie Place, Ste. 950
                               Greenville, SC 29601


For Defendant Harmon:          JACK LYNN, ESQ.
                               101 McGee Street
                               Greenville, SC 29601


For Defendant Alas:            RICHARD H. WARDER, ESQ.
                               PO Box 26133
                               Greenville, SC 29616


For Defendant Hyestos:         J. BRADLEY BENNETT, ESQ.
                               101 W. Park Avenue
                               Greenville,SC 29601

```
For Defendant Patterson:        MARGARET A. CHAMBERLAIN, ESQ
                                PO Box 10184
                                Greenville, SC 29603


For Defendant Rice:             O. CYRUS HINTON, ESQ.
                                145 N. Church Street
                                Spartanburg, SC 29306


For Defendant Shoemaker:        MICHAEL A. MACKINNON, ESQ.
                                300 Pettigru Street
                                Greenville, SC 29601


Court Reporter:                 KAREN E. MARTIN, RMR, CRR
                                300 E. Washington Street
                                Room 304
                                Greenville, SC 29601


The proceedings were taken by mechanical stenography and
the transcript produced by computer.
```

3

February 23, 2010

**THE CLERK:**  I'm going to line up the first
group.  If you will come forward as I call your name.
Shay Charles Michaelson represented by Mr. Plowden;
Kristen Marie Harmon represented by Mr. Lynn; Alvaro
Ezequeil Alas represented by Mr. Warder; Leonidas Hyestos
represented by Mr. Bennett; next, Joey Rayshon Patterson
with Ms. Chamberlain; Tommy Travis Rice with Mr. Hinton;
and Eric Michael Shoemaker with Mr. MacKinnon.

**THE COURT:**  To those defendants standing before
me, you have indicated you wish to plead guilty.  I will
be asking you questions and giving you advice as to what
you are giving up as far as giving up your right to a jury
trial by pleading guilty.  If at any time during this
proceeding you have any questions, make that question
known to the Court.  You may confer with your attorney at
any time that you have a question.

You will be under oath.  Every statement you
make to the Court must be truthful.  Should you make a
false statement to a material matter, you could be
prosecuted for perjury which is a separate criminal
offense.

I will be asking questions to the group but I
need for you to answer one at a time.  If that occurs, I
want to start on this end, your right, and have you to

4

1    speak up and answer one at a time.  You do need to speak

2    up so that everyone can hear your response.

3              The interpreter has been sworn previously but

4    we'll swear her again.

5         (WHEREUPON, the interpreter was sworn.)

6              **THE COURT:**  And now I'll ask that an oath be

7    given to the defendants.

8              **THE CLERK:**  Defendants, please raise your right

9    hands to be sworn.

10        (WHEREUPON, the defendants were sworn.)

11             **THE COURT:**  Mr. Michaelson, what's your full

12   name?

13             **MR. MICHAELSON:**  Shay Charles Michaelson.

14             **THE COURT:**  And how old are you?

15             **MR. MICHAELSON:**  Thirty-one.

16             **THE COURT:**  How far did you go in school?

17             **MR. MICHAELSON:**  Second year of college.

18             **THE COURT:**  Have you ever been treated for any

19   type of mental condition?

20             **MR. MICHAELSON:**  No, sir.

21             **THE COURT:**  This morning are you under the

22   influence of any type of alcohol, drug or medicine?

23             **MR. MICHAELSON:**  No, Your Honor.

24             **THE COURT:**  Mr. Plowden, do you have any

25   question as to his competence?

```
1            MR. PLOWDEN:  No, sir.

2            THE COURT:  Ms. Harmon, what's your full name?

3            MS. HARMON:  Kristen Marie Harmon.

4            THE COURT:  And how old are you?

5            MS. HARMON:  I am 39.

6            THE COURT:  How far did you go in school?

7            MS. HARMON:  I went two years in college.

8            THE COURT:  Have you ever been treated for any

9    type of mental, emotional or psychiatric condition?

10           MS. HARMON:  Depression.

11           THE COURT:  Are you under treatment for that at

12   this time?

13           MS. HARMON:  No, sir.

14           THE COURT:  And this morning are you under the

15   influence of any type of alcohol, drug or medicine?

16           MS. HARMON:  No, sir.

17           THE COURT:  Mr. Lynn, do you have any question

18   as to her competence?

19           MR. LYNN:  No, sir.

20           THE COURT:  Mr. Alas, what's your full name?

21           MR. ALAS:  Alvaro Ezequeil-Alas.

22           THE COURT:  Do you speak any English?

23           MR. ALAS:  Yes, sir.

24           THE COURT:  Well, you can answer me in English.

25   And if you have any question, we have an interpreter for
```

1    you.  How old are you?

2            **MR. ALAS:**  Twenty-one.

3            **THE COURT:**  How far did you go in school?

4            **MR. ALAS:**  I went to the 9th grade.

5            **THE COURT:**  Have you ever been treated for any

6    type of mental condition?

7            **MR. ALAS:**  No, sir.

8            **THE COURT:**  This morning are you under the

9    influence of any type of alcohol, drug or medicine?

10           **MR. ALAS:**  No, sir.

11           **THE COURT:**  And Mr. Warder, do you have any

12   question as to his competence?

13           **MR. WARDER:**  No, Your Honor, I do not.

14           **THE COURT:**  Mr. Hyestos, what is your full name?

15           **MR. HYESTOS:**  Leonidas Hyestos.

16           **THE COURT:**  Do you speak any English?

17           **MR. HYESTOS:**  No, sir.

18           **THE COURT:**  How old are you?

19           **MR. HYESTOS:**  Eighteen.

20           **THE COURT:**  How far did you go in school?

21           **MR. HYESTOS:**  I did not attend school.

22           **THE COURT:**  Have you ever been treated for any

23   type of mental condition?

24           **MR. HYESTOS:**  No.

25           **THE COURT:**  This morning are you under the

7

1    influence of any type of alcohol, drug or medicine?

2              **MR. HYESTOS:**  No, sir.

3              **THE COURT:**  Mr. Bennett, do you have any

4    question as to his competence?

5              **MR. BENNETT:**  No, sir, Your Honor.

6              **THE COURT:**  Mr. Patterson, what's your full

7    name?

8              **MR. PATTERSON:**  Joey Rayshon Patterson.

9              **THE COURT:**  And how old are you?

10             **MR. PATTERSON:**  Twenty-eight.

11             **THE COURT:**  How far did you go in school?

12             **MR. PATTERSON:**  I graduated high school.

13             **THE COURT:**  Have you ever been treated for any

14   type of mental, emotional or psychiatric condition?

15             **MR. PATTERSON:**  No, sir.

16             **THE COURT:**  This morning are you under the

17   influence of any type of alcohol, drug or medicine?

18             **MR. PATTERSON:**  No, sir.

19             **THE COURT:**  Ms. Chamberlain, do you have any

20   question as to his competence?

21             **MS. CHAMBERLAIN:**  No, Your Honor.

22             **THE COURT:**  Mr. Rice, what's your full name?

23        **MR. RICE:**  Tommy Travis Rice.

24             **THE COURT:**  And how old are you?

25             **MR. RICE:**  Twenty-nine.

```
 1                THE COURT:  How far did you go in school?

 2                MR. RICE:  Ninth grade.

 3                THE COURT:  Have you ever been treated for any

 4    type of mental condition?

 5                MR. RICE:  No, sir.

 6                THE COURT:  This morning are you under the

 7    influence of any type of alcohol, drug or medicine?

 8                MR. RICE:  No, sir.

 9                THE COURT:  Mr. Hinton, do you have any question

10    as to his competence?

11                MR. HINTON:  I do not, Your Honor.

12                THE COURT:  Mr. Shoemaker, what's your full

13    name?

14                MR. SHOEMAKER:  Eric Michael Shoemaker.

15                THE COURT:  And how old are you?

16                MR. SHOEMAKER:  I'm 48.

17                THE COURT:  How far did you go in school?

18                MR. SHOEMAKER:  College.

19                THE COURT:  Did you finish college?

20                MR. SHOEMAKER:  Yes, sir.

21                THE COURT:  Have you ever been treated for any

22    type of mental condition?

23                MR. SHOEMAKER:  Yes.

24                THE COURT:  Are you under treatment at this

25    time?
```

9

1              **MR. SHOEMAKER:**  Yes, I am.

2              **THE COURT:**  What type of condition?

3              **MR. SHOEMAKER:**  Antidepressants.

4              **THE COURT:**  Are you taking medication for

5     depression at this time?

6              **MR. SHOEMAKER:**  Yes.

7              **THE COURT:**  And does that medication interfere

8     in any way with your ability to understand what's taking

9     place?

10             **MR. SHOEMAKER:**  No, sir.

11             **THE COURT:**  Other than that medication, are you

12    under the influence this morning of any type of alcohol,

13    drug or medicine?

14             **MR. SHOEMAKER:**  No, sir.

15             **THE COURT:**  Mr. MacKinnon, do you have any

16    question as to his competence?

17             **MR. MacKINNON:**  No, Your Honor.  I would add

18    that he was sent for a psychiatric evaluation and he was

19    found competent, Your Honor.  We did not disagree with

20    that finding.

21             **THE COURT:**  Thank you, sir.

22             The Court finds that each defendant is competent

23    to proceed.  And that finding is based upon the answers

24    given, the representations made and also from my

25    observation of each of the defendants standing before me

```
1    this morning.
2         I now ask each of you whether you have had
3    enough time to discuss this matter with your attorney and
4    whether you are satisfied thus far with your attorney?
5         MR. MICHAELSON:  Yes, sir.
6         MS. HARMON:  Yes, sir.
7         MR. ALAS:  Yes, sir.
8         MR. HYESTOS:  Yes, sir.
9         MR. PATTERSON:  Yes, sir.
10        MR. RICE:  Yes, sir.
11        MR. SHOEMAKER:  Yes, sir.
12        THE COURT:  Do you have any complaints of your
13   attorney or anyone else in connection with this case?
14        MR. MICHAELSON:  No, Your Honor.
15        MS. HARMON:  No, Your Honor.
16        MR. ALAS:  No, Your Honor.
17        MR. HYESTOS:  No.
18        MR. PATTERSON:  No, sir.
19        MR. RICE:  No.
20        MR. SHOEMAKER:  No, sir.
21        THE COURT:  At this time I will go over the
22   indictment to which you are offering to plead guilty.
23        Mr. Michaelson, you are offering to plead guilty
24   to Count 1 of your indictment which charges that on or
25   about December 2005 in the District of South Carolina that
```

1    you with the intent to defraud did falsely make, forge and

2    counterfeit obligations of the United States; that is,

3    20-dollar Federal Reserve notes.  Do you understand what

4    you are charged with?

5            **MR. MICHAELSON:**  Yes, Your Honor.

6            **THE COURT:**  The elements are as follows:  That

7    you falsely made, forged or either counterfeited

8    obligations of the United States which were sufficiently

9    similar to genuine currency so as to fool an honest,

10   unsuspecting person; and that you did so with the intent

11   to defraud.  Do you understand those elements?

12           **MR. MICHAELSON:**  Yes, Your Honor.

13           **THE COURT:**  The statute provides for a maximum

14   sentence of $250,000 and/or imprisonment for 20 years,

15   supervised release of three years and a special assessment

16   of $100.  Do you understand that?

17           **MR. MICHAELSON:**  Yes, Your Honor.

18           **THE COURT:**  Understanding what you are charged

19   with, what the elements are and what the statutory

20   sentencing provisions could be, do you still wish to plead

21   guilty?

22           **MR. MICHAELSON:**  Yes, Your Honor.

23           **THE COURT:**  Ms. Harmon, you are offering to

24   plead guilty to Counts 4 and 5 of your indictment.  Count

25   4 charges as follows:  That on or about January 23, 2009,

1    in the District of South Carolina that you did knowingly

2    possess with the intent to use unlawfully and to transfer

3    unlawfully five or more authentication features,

4    identification documents and false identification

5    documents other than those issued lawfully to you

6    affecting interstate commerce; to wit, South Carolina

7    driver's licenses, false South Carolina driver's licenses

8    and genuine South Carolina identification cards and false

9    South Carolina cards of five or more individuals.  Do you

10   understand what you are charged with in Count 4?

11            **MS. HARMON:**  Yes, sir.

12            **THE COURT:**  The elements of this offense are as

13   follows:  That you possessed five or more false

14   identification documents, genuine identification documents

15   or authentication features; that you did so knowingly and

16   willfully with the intent to unlawfully possess or

17   transfer the false identification documents, genuine

18   identification documents or authentication features; and

19   that your possession of these documents was in or affected

20   interstate commerce.  Do you understand those elements?

21            **MS. HARMON:**  Yes, sir.

22            **THE COURT:**  The statute provides for a maximum

23   sentence of 15 years, maximum fine of $250,000, supervised

24   release of three years and a special assessment of $100.

25   Do you understand that?

1          **MS. HARMON:**  Yes, sir.

2          **THE COURT:**  In Count 5, you are charged with the

3     following:  That on or about January 23, 2009, in the

4     District of South Carolina, you, during and in relation to

5     a felony violation of 18 USC Section 1028(a)(3), which is

6     charged in Count 4, that you did possess with lawful --

7     that you knowingly did possess with lawful authority a

8     means of identification of another person; that is, the

9     name -- excuse me, I think I said that wrong.  Did

10    knowingly possess without lawful authority a means of

11    identification of another person; that is, the name, date

12    of birth and South Carolina driver's license number of

13    another individual.  Do you understand what you are

14    charged with in Count 5?

15         **MS. HARMON:**  Yes, sir.

16         **THE COURT:**  The elements are that you knowingly

17    did transfer, possess or use a means of identification of

18    another person without lawful authority.  Do you

19    understand those elements?

20         **MS. HARMON:**  Yes, sir.

21         **THE COURT:**  The statute provides a maximum fine

22    of $250,000 and/or imprisonment for two years consecutive

23    to any other term of imprisonment imposed for the fraud

24    count and supervised release of one year and a special

25    assessment of $100.  Do you understand that?

1          **MS. HARMON:**  Yes, sir.

2          **THE COURT:**  As to Counts 4 and 5, understanding

3    what you are charged with, what the elements are and what

4    the statutory sentencing provisions could be, do you still

5    wish to plead guilty?

6          **MS. HARMON:**  Yes, sir.

7          **THE COURT:**  Mr. Alas and Mr. Hyestos, you are

8    offering to plead guilty to Count 1 of your indictment

9    which charges as follows:  That beginning at a time

10   unknown to the grand jury but beginning at least April --

11   at April of 2009 and continuing thereafter up to and

12   including the date of the indictment, that you knowingly

13   and intentionally did enter into an unlawful conspiracy to

14   possess -- to unlawfully possess with the intent to

15   distribute cocaine and crack cocaine; said conspiracy

16   involving five kilograms or more of cocaine and 50-grams

17   or more of crack cocaine.  Do you understand what you are

18   charged with in Count 1 of the indictment?

19         **MR. ALAS:**  Yes, Your Honor.

20         **MR. HYESTOS:**  Yes, sir.

21         **THE COURT:**  The elements of this offense are as

22   follows:  That the conspiracy as describe in the

23   indictment to describe the charged amount of controlled

24   substances was willfully formed and was existing at or

25   about the alleged time, that you willfully became a member

1    of the conspiracy, and that you distributed a quantity of

2    a controlled substance equal to or in excess of the

3    amounts charged in Count 1, that you agreed to assist in

4    the distribution of a quantity of controlled substance

5    equal to or in excess of the amounts charged in Count 1,

6    or the distribution of the threshold quantity of

7    controlled substances equal to or in excess of the amounts

8    charged in Count 1 was reasonably foreseeable to you and

9    the same was within the scope of your unlawful agreement.

10   Do you understand those elements?

11             **MR. ALAS:**  Yes, sir.

12             **MR. HYESTOS:**  Yes, sir.

13             **THE COURT:**  The statute provides in a case

14   involving five kilograms or more of cocaine and/or

15   50-grams or more of crack cocaine and no prior felony drug

16   conviction, a minimum term of imprisonment of ten years

17   and a maximum term of life imprisonment, no probation, no

18   parole, a fine of four million dollars and a term of

19   supervised release of at least five years in addition to

20   any other term of imprisonment plus a special assessment

21   of $100.  Do you understand the possible statutory

22   sentencing provisions?

23             **MR. ALAS:**  Yes, sir.

24             **MR. HYESTOS:**  Yes, sir.

25             **THE COURT:**  Understanding what you are charged

1    with, what the elements are and what the statutory

2    sentencing provisions could be, do you still wish to plead

3    guilty?

4                **MR. ALAS:**  Yes, sir.

5                **MR. HYESTOS:**  Yes, sir.

6                **THE COURT:**  Mr. Patterson and Mr. Rice, you are

7    offering to plead guilty to Count 1 of your indictment

8    which charges as follows:  It alleges that the various

9    banks involved in the indictment were financial

10   institutions with deposits insured by the Federal Deposit

11   Insurance Corporation and that ArrowPointe Federal Credit

12   Union was a financial institution with deposits insured by

13   the National Credit Union Administration, and that between

14   June of 2008 and October of 2008 that you did knowingly

15   enter into an unlawful conspiracy -- excuse me, that you

16   did enter into an unlawful scheme and artifice to defraud

17   these banks and financial institutions of monies and funds

18   and other property of the financial institutions by means

19   of false and fraudulent pretenses, representations and

20   promises.  That's the gist of the indictment.

21               And the indictment further goes forth and

22   charges certain matters that were done in part of the

23   scheme and artifice to defraud.  And the indictment

24   further alleges certain matters which were accomplished to

25   carry out the "check-kiting" aspect of the unlawful

1    scheme.

2           And furthermore, the indictment charges that

3    between June 19, 2008, and October 14, 2008, in the

4    District of South Carolina that you knowingly and

5    willfully did execute and attempt to execute the scheme

6    and artifice to defraud these financial institutions in

7    that you did convert to your own use approximately $21,826

8    before the kiting scheme was discovered.

9           That's what's been alleged against you.  Do you

10   understand what you are charged with?

11          **MR. PATTERSON:**  Yes, sir.

12          **MR. RICE:**  Yes, sir.

13          **THE COURT:**  The elements of this offense are as

14   follows:  That you knowingly executed a scheme or artifice

15   to defraud a financial institution, that you did so with

16   the intent to defraud, and the financial institutions were

17   federally insured.  Those are the basic elements.  Do you

18   understand that?

19          **MR. PATTERSON:**  Yes, sir.

20          **MR. RICE:**  Yes, sir.

21          **THE COURT:**  The statute provides for a maximum

22   fine of one million dollars and/or imprisonment for 30

23   years, supervised release of five years and a special

24   assessment of $100.  Do you understand that?

25          **MR. PATTERSON:**  Yes, sir.

1          **MR. RICE:**  Yes, sir.

2          **THE COURT:**  Understanding what you are charged

3     with, what the elements are and what the statutory

4     sentencing provisions could be, do you still wish to plead

5     guilty?

6          **MR. PATTERSON:**  Yes, sir.

7          **MR. RICE:**  Yes, sir.

8          **THE COURT:**  Mr. Shoemaker, you are offering to

9     plead guilty to your indictment which charges that on or

10    about September 17th in the -- excuse me, September 17th,

11    2009, in the District of South Carolina that you, having

12    been convicted of a crime punishable by imprisonment for a

13    term exceeding one year, knowingly did possess in and

14    affecting commerce firearms; that is, a Smith & Wesson .38

15    caliber revolver, a Mossberg .270 caliber rifle and a

16    Marlin 30-30 caliber rifle which had been shipped in

17    interstate commerce.  Do you understand what you are

18    charged with?

19         **MR. SHOEMAKER:**  Yes, sir.

20         **THE COURT:**  The elements are that you had

21    previously been convicted of a crime punishable by a term

22    of imprisonment exceeding one year, that you knowingly

23    possessed a firearm, and the possession was in and

24    affecting interstate commerce because the firearm had

25    traveled in interstate commerce at some point.  Do you

1    understand those basic elements?

2              **MR. SHOEMAKER:**  Yes, sir.

3              **THE COURT:**  The statute provides for a maximum

4    sentence of ten years and/or a fine of $250,000,

5    supervised release of three years and a special assessment

6    of $100.  Do you understand that?

7              **MR. SHOEMAKER:**  Yes, sir.

8              **THE COURT:**  Understanding what you are charged

9    with, what the elements are and what the statutory

10   sentencing provisions could be, do you still wish to plead

11   guilty?

12             **MR. SHOEMAKER:**  Yes, sir.

13             **THE COURT:**  Although each of you have indicated

14   you wish to plead guilty, you are still presumed innocent.

15   You have an absolute right to a jury trial.  And at a jury

16   trial you would be presumed innocent throughout the trial.

17             The burden of proof would be on the Government

18   to prove your guilt beyond a reasonable doubt.  And you

19   would not be required to prove your innocence.  If you

20   chose to do so, you could remain silent and not testify

21   during your trial and that fact could not be held against

22   you.

23             You would be represented by your attorney

24   throughout the trial.  You would have the right of

25   compulsory process, which means that you could subpoena

1    witnesses in your defense.  If you chose to do so, you

2    could testify in your defense, you could call witnesses in

3    your defense and you could introduce any other relevant

4    evidence in your defense.  But you would not be required

5    to testify, to call any witnesses or to produce any

6    evidence because, as I said earlier, the burden of proof

7    in a criminal case is always on the Government to prove

8    your guilt beyond a reasonable doubt and you are not

9    required to prove your innocence.

10           You would be entitled to a jury trial.  And

11   before you could be found guilty the verdict of the jury

12   would have to be unanimous.  And the jury would be

13   instructed that if the Government failed in its burden of

14   proof, the jury would be required to find you not guilty.

15           By pleading guilty you are giving up all of

16   those rights in connection with a jury trial.  Do you

17   understand what I have just told you and do you still wish

18   to plead guilty?

19           **MR. MICHAELSON:**  Yes, Your Honor.

20           **MS. HARMON:**  Yes, Your Honor.

21           **MR. ALAS:**  Yes, Your Honor.

22           **MR. HYESTOS:**  Yes, sir.

23           **MR. PATTERSON:**  Yes, sir.

24           **MR. RICE:**  Yes, Your Honor.

25           **MR. SHOEMAKER:**  Yes, Your Honor.

```
 1              THE COURT:  Has anyone threatened, forced or
 2    coerced you in any way to get you to plead guilty?
 3              MR. MICHAELSON:  No, Your Honor.
 4              MS. HARMON:  No, Your Honor.
 5              MR. ALAS:  No, Your Honor.
 6              MR. HYESTOS:  No.
 7              MR. PATTERSON:  No, sir.
 8              MR. RICE:  No, Your Honor.
 9              MR. SHOEMAKER:  No, Your Honor.
10              THE COURT:  Are you pleading guilty because you
11    are guilty?
12              MR. MICHAELSON:  Yes, Your Honor.
13              MS. HARMON:  Yes, Your Honor.
14              MR. ALAS:  Yes, Your Honor.
15              MR. HYESTOS:  Yes, sir.
16              MR. PATTERSON:  Yes, sir.
17              MR. RICE:  Yes, Your Honor.
18              MR. SHOEMAKER:  Yes, sir.
19              THE COURT:  Has anyone, including your attorney,
20    promised you what your actual sentence will be?
21              MR. MICHAELSON:  No, Your Honor.
22              MS. HARMON:  No, Your Honor.
23              MR. ALAS:  No.
24              THE COURT:  Speak up, please.  The question is
25    has anyone, including your attorney, promised you what
```

1    your actual sentence will be?

2              **MR. HYESTOS:**  No.

3              **MR. PATTERSON:**  No, sir.

4              **MR. RICE:**  No, Your Honor.

5              **MR. SHOEMAKER:**  No, Your Honor.

6              **THE COURT:**  Mr. Michaelson, has the Government

7    promised you anything to get you to plead guilty?

8              **MR. MICHAELSON:**  No, Your Honor.

9              **MS. HARMON:**  No, Your Honor --

10             **THE COURT:**  Wait a minute.

11             **MS. HARMON:**  Sorry.

12             **THE COURT:**  Ms. Harmon, I understand there is a

13   plea agreement in your case.  I have a copy of the plea

14   agreement.  On the last page of the agreement there

15   appears to be your signature.  Is that your signature?

16             **MS. HARMON:**  Yes, sir.

17             **THE COURT:**  Have you and your attorney

18   thoroughly reviewed this plea agreement?

19             **MS. HARMON:**  Yes, sir.

20             **THE COURT:**  Do you understand each and every

21   provision of this agreement?

22             **MS. HARMON:**  I believe so, yes, sir.

23             **THE COURT:**  Is this the entire agreement between

24   you and the Government?

25             **MS. HARMON:**  Yes, sir.

1          **MR. WATKINS:**  Your Honor, may it please the

2     Court?  I would like to point out there is an appellate

3     waiver in this plea agreement where this defendant agrees

4     in exchange for concessions made by the Government to

5     waive her appellate rights and 2255 rights except for

6     prosecutorial misconduct or ineffective assistance of

7     counsel.

8          **THE COURT:**  Do you understand what he just said?

9          **MS. HARMON:**  Not exactly.

10         **THE COURT:**  Well, the agreement apparently has

11     in it a provision that in exchange for your plea the

12     Government apparently is not proceeding against other

13     counts.

14         Is that correct?

15         **MR. WATKINS:**  That's right.  We are dismissing

16     the first count at sentencing, Your Honor.

17         **THE COURT:**  And what you are agreeing to do is

18     waive your right to appeal the sentence.  Do you

19     understand that?

20         **MS. HARMON:**  I believe so.  I'm sorry.  I

21     believe so, yes, sir.  I believe --

22         **THE COURT:**  Well, ordinarily, a person reserves

23     and has an absolute right to appeal a sentence once it is

24     given.  And unless there's some -- well, let me just say

25     it this way.  A person can give up that right.  And what

1    this plea agreement says is that you are giving up that

2    right to appeal the sentence.  Is that your understanding?

3              **MS. HARMON:**  Yes, sir.

4              **THE COURT:**  And do you understand that if you

5    don't like the sentence or you think there is some error

6    made other than prosecutorial misconduct, you cannot

7    appeal this sentence.  Do you understand that?

8              **MS. HARMON:**  Yes, sir.

9              **THE COURT:**  All right.

10             Mr. Alas, has the Government promised you

11   anything to get you to plead guilty?

12             **MR. ALAS:**  No, sir.

13             **THE COURT:**  And Mr. Hyestos, has the Government

14   promised you anything to get you to plead guilty?

15             **MR. HYESTOS:**  No, sir.

16             **THE COURT:**  Mr. Patterson and Mr. Rice,

17   Mr. Rice, has the Government promised you anything to get

18   you to plead guilty?

19             **MR. PATTERSON:**  No, sir.

20             **MR. RICE:**  No, sir.

21             **THE COURT:**  Well, you answered.

22             **MR. PATTERSON:**  No, sir.

23             **THE COURT:**  Thank you.

24             And Mr. Shoemaker, has the Government promised

25   you anything to get you to plead guilty?

25

1              **MR. SHOEMAKER:**  No, sir.

2              **THE COURT:**  I'm sure you have been -- wait a

3     minute.  Mr. Michaelson, Ms. Harmon, Mr. Patterson,

4     Mr. Rice, do you understand that if I accept your plea of

5     guilty, at sentencing I can require you to make full and

6     complete restitution for any loss to any victim?  Do you

7     understand that?

8              **MR. MICHAELSON:**  Yes, Your Honor.

9              **MS. HARMON:**  Yes, Your Honor.

10              **MR. PATTERSON:**  Yes, sir.

11              **MR. RICE:**  Yes, sir.

12              **THE COURT:**  As I'm sure you have been told, we

13     have sentence guidelines in federal court.  That procedure

14     requires that the U.S. Probation Office prepare a

15     Presentence Report in your individual case.  And in the

16     Presentence Report there will be a calculation as to a

17     guideline range that applies in your case.

18              Once the report is finalized, you and the

19     Government are given copies of the report.  And if there

20     are any objections to anything in the report which cannot

21     be resolved, you would be entitled to a hearing before the

22     Court to resolve any objections.

23              Once that is done, then the Court is required to

24     consider the guidelines.  The guidelines are advisory

25     only.  The Court can impose a sentence which is more

26

```
1    severe or less severe than that called for by the
2    guidelines.
3              If you are sentenced to a term of imprisonment,
4    there is no parole in federal court and you would not be
5    eligible to be released on parole.  And once you are
6    sentenced, except for Ms. Harmon, you and the Government
7    may have a right to appeal this sentence.
8              Do you understand what I have just told you?
9         MR. MICHAELSON:  Yes, Your Honor.
10        MS. HARMON:  Yes, Your Honor.
11        MR. ALAS:  Yes, Your Honor.
12        MR. HYESTOS:  Yes, sir.
13        MR. PATTERSON:  Yes, sir.
14        MR. RICE:  Yes, Your Honor.
15        MR. SHOEMAKER:  Yes, sir.
16        THE COURT:  I further tell you that if you are
17   sentenced to a term of imprisonment, you will also be
18   sentenced to an additional term of supervised release.
19   And should you violate any of the conditions of your
20   supervised release, you could be sentenced to an
21   additional term of imprisonment.  Do you understand that?
22        MR. MICHAELSON:  Yes, Your Honor.
23        MS. HARMON:  Yes, Your Honor.
24        MR. ALAS:  Yes, Your Honor.
25        MR. HYESTOS:  Yes, sir.
```

1          **MR. PATTERSON:**  Yes, sir.

2          **MR. RICE:**  Yes, Your Honor.

3          **MR. SHOEMAKER:**  Yes, sir.

4          **THE COURT:**  At this time I will ask the

5    Government to summarize the facts in your case.  When the

6    Government finishes summarizing, I will ask you whether

7    you agree with those facts and whether you are in fact

8    guilty.

9          First, as to Mr. Michaelson?

10         **MR. STEPHENS:**  Your Honor, may it please the

11   Court?  On December 28th, 2005, local law enforcement went

12   to the residence of Mr. Michaelson.  They had received

13   information that there was someone outside his home trying

14   to get in that had some weapons.  When they arrived there,

15   Mr. Michaelson told them that it was a locksmith trying to

16   get into his home.

17         As things developed, they asked permission to

18   search his home.  Found therein were some counterfeit

19   currency.

20         They then contacted Secret Service.  Secret

21   Service interviewed Mr. Michaelson.  He admitted fully

22   that he had been involved in manufacturing about $4,000

23   worth of counterfeit currency, 20-dollar bills.  He said

24   that he started out using it to buy drugs, that I believe

25   only about $110 went to a legitimate business.  And that's

1     the case, Your Honor.

2          **THE COURT:**  Having heard that, Mr. Michaelson,

3     do you agree with it?

4          **MR. MICHAELSON:**  Yes, Your Honor.

5          **THE COURT:**  Did you as charged in the indictment

6     on or about December 25th -- excuse me, December 2005 in

7     the District of South Carolina with intent to defraud make

8     false and counterfeit obligations of the United States as

9     set forth and fully charged in the indictment?

10         **MR. MICHAELSON:**  Yes, sir.

11         **THE COURT:**  And are you guilty?

12         **MR. MICHAELSON:**  Yes, Your Honor.

13         **THE COURT:**  You may sign your plea at this time.

14         As to Ms. Harmon?

15         **MR. WATKINS:**  May it please the Court, Your

16    Honor?  This case originates from an investigation by

17    postal inspectors and local law enforcement of the passing

18    of counterfeit checks of the following businesses:  Coupon

19    Cash; Subway of Greenville; and Jank Enterprises, J-A-N-K.

20    These checks were passed in the upstate of South Carolina.

21    Inspectors identified Ms. Harmon as a participant in this

22    scheme.

23         On January 23rd, 2009, Ms. Harmon was arrested

24    pursuant to a bench warrant from Spartanburg County.  At

25    the time of her arrest, she was in possession of numerous

1   counterfeit checks, fraudulent driver's licenses and

2   genuine driver's licenses.  Specifically, Ms. Harmon

3   possessed the following:  The genuine driver's license of

4   Donna Abbott Foster; an altered driver's license in the

5   name of Donna Abbott Foster with a different driver's

6   license number belonging to one Angela B. Waddell; an

7   altered driver's license with the name of Beth Ann Foster,

8   the driver's license number belonged to another victim,

9   Ms. Jamie Elveena James; the genuine driver's license of

10  James Anthony Giannico, G-I-A-N-N-I-C-O; and a genuine

11  driver's license of Beth Ann Gregory.

12          In a statement given after waiving her Miranda

13  rights, Ms. Harmon admitted to negotiating counterfeit

14  checks.  She also said that she got the IDs in her

15  possession from Robert Bowling, who is a co-defendant in

16  this case.  She also admitted to scanning in genuine IDs

17  and altering them for use in check cashing -- in the check

18  cashing scheme.

19          **THE COURT:**  Having heard that summary of the

20  evidence, Ms. Harmon, do you agree with it?

21          **MS. HARMON:**  Yes, sir.

22          **THE COURT:**  Did you as charged in Counts 4 and 5

23  on or about January 23, 2009, in the District of South

24  Carolina unlawfully possess and utilize false

25  identification documents as fully set forth in these two

1    counts?

2         **MS. HARMON:**  Yes, sir.

3         **THE COURT:**  And are you guilty?

4         **MS. HARMON:**  Yes, sir.

5         **THE COURT:**  You may sign your plea at this time.

6         As to Mr. Alas and Mr. Hyestos?

7         **MR. MOORMAN:**  May it please the Court, Your

8    Honor?  On July 24th, 2009, a confidential informant

9    working for the Greenville County Sheriff's Office made a

10   monitored phone call to Alas to arrange to buy a kilogram

11   of cocaine.  The sale was to occur behind the Wal-Mart on

12   White Horse Road in Greenville County but Alas called the

13   C.I. and moved the meeting place to a trailer on White

14   Horse Road which was later determined to be in Greenville

15   County.  The C.I. had told law enforcement that Alas would

16   use a guy named "Young Boy Hyestos" to deliver the drugs

17   and Hyestos would be driving a Ford Focus.

18        Law enforcement set up surveillance at 4807

19   White Horse Road.  And the police saw Alas in a Dodge

20   pickup truck and Hyestos in a Ford Focus, both at the

21   scheduled meeting place.

22        They moved in and arrested Alas and Hyestos.

23   The police ran a dog around both the pickup truck and the

24   Ford Focus and the dog alerted on both cars.  The police

25   later obtained a search warrant and searched the cars.

1    They found one kilogram of cocaine on the passenger seat

2    of the Ford Focus, the car Hyestos was driving.  They also

3    seized Alas' cell phone which contained the C.I.'s number

4    numerous times in the call log, one entry being within

5    five minutes prior to the buy/bust.

6            After the arrest, the C.I. discussed the

7    conspiracy with the agents.  The C.I. made contact with a

8    man named Alex, who was Alas, in April of 2009.  The C.I.

9    met Alas at a trailer.  During the meeting, Alas showed

10   the C.I. four kilograms of cocaine.  The C.I. bought ounce

11   quantities of cocaine from Alas for about a month after

12   the meeting.  He then bought kilogram quantities from Alas

13   for the next three or four months, approximately 10 to

14   15 kilograms.  Over the next three or four months

15   sometimes Alas would deliver the cocaine and sometimes

16   Hyestos and Alas would deliver the cocaine.

17           Sometime in the spring or early summer of 2009,

18   another co-defendant, Quinton Wright, called the

19   confidential informant and wanted to know if the C.I.

20   could put him in touch with the source of supply of

21   cocaine.  The C.I. introduced Wright to Alas and

22   personally observed Wright purchased four and a half

23   kilograms of cocaine from Alas on separate occasions.

24   Wright continued to buy kilogram quantities of cocaine

25   from Alas over the next few months and he would buy the

1    cocaine and manufacture crack cocaine well in excess of

2    50-grams.

3              **THE COURT:**  Having heard that summary, Mr. Alas

4    and Mr. Hyestos, do you agree with it?

5              **MR. ALAS:**  Yes.

6              **MR. HYESTOS:**  Yes, sir.

7              **THE COURT:**  Did you, as charged in Count 1 of

8    the indictment, enter into this unlawful conspiracy to

9    possess with the intent to distribute cocaine and crack

10   cocaine as fully set forth and alleged in Count 1 of the

11   indictment?

12             **MR. ALAS:**  Yes, sir.

13             **MR. HYESTOS:**  Yes, sir.

14             **THE COURT:**  And are you guilty?

15             **MR. ALAS:**  Yes, sir.

16             **MR. HYESTOS:**  Yes, sir.

17             **THE COURT:**  You may sign your pleas at this

18   time.

19             As to Mr. Patterson and Mr. Rice?

20             **MR. WATKINS:**  May it please the Court, Your

21   Honor?  This is a check-kiting case.  And pursuant to the

22   scheme to defraud, Defendants Patterson and Rice, along

23   with co-defendants Mondell who had already pled guilty and

24   others, opened various accounts at Palmetto Bank, First

25   Citizens Bank, BB&T, and the Bank of Travelers Rest as

1    well as ArrowPointe Federal Credit Union.  These

2    institutions were insured by the FDIC or the National

3    Credit Union Administration.

4         The defendants would write checks on bank

5    accounts with insufficient funds and deposit the checks in

6    other accounts.  They would also insert empty deposit

7    envelopes into ATM machines and key in false amounts for

8    deposit.  This pattern of depositing insufficient funds

9    checks and false ATM deposits resulted in the books of the

10   banks showing inflated balances.  That permitted the

11   checks to be honored rather than return unpaid.  The

12   defendants would then withdraw monies from the banks and

13   write checks for goods and services based on inflated

14   balances and thus take advantage of the time required for

15   a check deposited in one bank to be physically presented

16   for payment at the bank on which it was drawn.

17        From August 10 through August 30, 2008, a number

18   of insufficient funds checks were drawn on accounts

19   belonging to Mr. Rice and deposited into Mr. Patterson's

20   account pursuant to the scheme.  Just by way of example,

21   on August 10, 2008, Check No. 223 was drawn upon

22   Mr. Rice's BB&T account and deposited into Mr. Patterson's

23   Regions Bank account.  Also on August 12, 2008, Check

24   No. 225 was drawn upon Mr. Rice's BB&T account and

25   deposited in Mr. Patterson's Regions' account.  There was

34

1    a number of other similar transactions.

2         Your Honor, on December 1st, 2008, Mr. Rice was

3    advised of his Miranda rights and waived them and agreed

4    to speak with Greenville County detectives.  He provided a

5    written statement regarding his participation in the

6    scheme.  He stated that Mr. Mondell had urged him to open

7    checking accounts in exchange for payment.  He admitted to

8    opening accounts at BB&T and the Bank of Travelers Rest.

9    He also confirmed that he provided Mr. Mondell with the

10   address to which the account ATM debit cards should be

11   mailed.

12        Mr. Patterson was interviewed by law enforcement

13   on April 10, 2009.  He also admitted that he opened

14   multiple accounts at Mr. Mondell's request.  The named

15   banks in this case lost over $20,000 because of the kite.

16        **THE COURT:**  Mr. Patterson and Mr. Rice, having

17   heard that summary by the Government, do you agree with

18   it?

19        **MR. PATTERSON:**  Yes, sir.

20        **MR. RICE:**  Yes, sir.

21        **THE COURT:**  Did you as charged in the indictment

22   enter into this unlawful scheme and artifice to defraud

23   these financial institutions as fully set forth and

24   alleged in the indictment?

25        **MR. PATTERSON:**  Yes, sir.

1              **MR. RICE:**  Yes, sir.

2              **THE COURT:**  And are you guilty?

3              **MR. PATTERSON:**  Yes, sir.

4              **MR. RICE:**  Yes, Your Honor.

5              **THE COURT:**  You may sign your plea at this time.

6         As to Mr. Shoemaker?

7              **MR. WATKINS:**  May it please the Court, Your

8    Honor?  In September 2009, Cherokee County sheriff's

9    deputies received complaints that the defendant was

10   selling black powder rifles and ammunition over the

11   internet but not shipping the items to customers.

12   Mr. Shoemaker was interviewed, waived his Miranda rights

13   and did admit to defrauding people.  He also gave law

14   enforcement consent to search his home.

15        A search revealed that Mr. Shoemaker possessed a

16   Smith & Wesson .38 caliber revolver, a Mossberg .270

17   caliber rifle and a Marlin 30-30 caliber rifle.  Each had

18   been shipped and transported in interstate and foreign

19   commerce.

20        The Mossberg and Marlin rifles were manufactured

21   in Connecticut.  And the Smith & Wesson pistol was

22   manufactured in Massachusetts.

23        Mr. Shoemaker has been convicted of a crime

24   punishable by imprisonment for a term exceeding one year;

25   to wit, knowingly uttering worthless checks which is a

1    third degree felony in Florida and punishable by up to

2    five years' imprisonment.  This conviction was final in

3    1991.

4          **THE COURT:**  Mr. Shoemaker, having heard that

5    summary by the Government, do you agree with it?

6          **MR. SHOEMAKER:**  Yes, sir.

7          **THE COURT:**  Did you as charged in the indictment

8    on or about September 17, 2009, in the District of South

9    Carolina, unlawfully possess firearms which had traveled

10   in interstate commerce at some point, you having been

11   previously convicted of a crime punishable by imprisonment

12   for a term exceeding one year?

13         **MR. SHOEMAKER:**  Yes, sir.

14         **THE COURT:**  And are you guilty?

15         **MR. SHOEMAKER:**  Yes, sir.

16         **THE COURT:**  You may sign your plea at this time.

17         The Clerk may publish the pleas.

18         **THE CLERK:**  May it please the Court?  The

19   defendants standing before you have all withdrawn

20   previously entered pleas of not guilty and enter pleas of

21   guilty as follows:  Shay Charles Michaelson to Count 1 of

22   his indictment; Kristen Marie Harmon to Counts 4 and 5 of

23   her indictment; Alvaro Alas to Count 1 of his indictment;

24   Leonidas Hyestos to Count 1 of his indictment; Joey

25   Rayshon Patterson and Tommy Travis Rice to Count 1 of

1    their indictment; and Eric Michael Shoemaker to Count 1 of

2    his indictment, all after arraignment in open court.

3              **THE COURT:**  It is the finding of the Court in

4    the cases just published by the clerk that each defendant

5    is fully competent and capable of entering an informed

6    plea.  And each plea of guilty is a knowing and voluntary

7    plea supported by an independent basis in fact containing

8    each of the essential elements of the offense.  Each

9    please is therefore accepted and each defendant adjudged

10   guilty of the respective offenses.

11             That's all until sentencing.  Thank you for your

12   cooperation.

13             **MR. STEPHENS:**  Thank you, Your Honor.

14             **THE COURT:**  We'll stand in recess until 1:30.

15                              ***

16   I certify that the foregoing is a correct transcript from

17   the record of proceedings in the above-entitled matter.

18

19       s/Karen E. Martin                    9/29/10

20   _____        _____
     Karen E. Martin, RMR, CRR              Date

21

22

23

24

25